Enid V. WENNER, Cecilia M. Jacobsen, Jacqueline R. Eisenbaum, Robert and Pamela Eber, George C. and Caril A. Welch, III, Lenore Medow, Harry F. and Florence K. Ruston, Petitioners–Appellants,

v.

BOARD OF ASSESSMENT APPEALS FOR the STATE OF COLORADO; the Board of County Commissioners of the County of Arapahoe, sitting as the Arapahoe County Board of Equalization; and James A. Reeves, the County Assessor for the County of Arapahoe, Respondents–Appellees.

Nos. 92CA1879, 92CA1964 and 93CA0037.

Colorado Court of Appeals,
Div. II.

Nov. 18, 1993.

Tallmadge, Wallace, Hahn, Smith & Walsh, P.C., David J. Hahn, John W. Smith, III, Cynthia A. Calkins, Denver, CO, for petitioners-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, Asst. Atty. Gen., Denver, CO, for respondent-appellee Bd. of Assessment Appeals for the State of Colo.; Peter L. Vana, III, County Atty., Richard F. Mutzbaugh, Sp. Asst. County Atty., Littleton, CO, for respondents-appellees Bd. of County Com'rs of the County of Arapahoe, sitting as the Arapahoe County Bd. of Equalization; and James A. Reeves, the County Assessor for the County of Arapahoe.

Opinion by Judge TURSI.

This action concerns the revaluation of residential property for the 1991 tax year in the town of Cherry Hills Village. Petitioners, various homeowners affected by the revaluation, appeal from the order entered by the Board of Assessment Appeals (BOAA) upholding the revaluation and denying their petitions for relief. We affirm.

In April 1991, the homeowners of Cherry Hills Village, including petitioners, received a notice of valuation from the Arapahoe County assessor for the 1991 tax year pursuant to § 39–5–121, C.R.S. (1982 Repl.Vol. 16B). When referees began conducting review hearings for the Arapahoe County Board of Equalization (County Board) in July, *see* § 39–8–102(2)(i), § 39–8–106, and § 39–8–107, C.R.S. (1993 Cum.Supp.), it became apparent that a large disparity existed between the valuations of residential property in Cherry Hills Village and other areas in Arapahoe County. The referees, therefore, recommended to the County Board that the Cherry Hills Village properties be revalued.

On August 16, 1991, the Board of County Commissioners, acting also as the County Board pursuant to § 39–8–101, C.R.S. (1982 Repl.Vol. 16B), adopted Resolution 983–91 which set forth the referees' recommendation and contained an acknowledgment of both the existence of a disparity in land values and the necessity of a readjustment. The Board further declared its intention to take the following actions:

1. The Board hereby determines to revalue Cherry Hills Village in order to equalize those property values with compatible Arapahoe County properties and/or to reflect correct values based upon market value and/or other assessment methodologies.

2. The Board hereby determines, as a beginning, to adjust land values to the same level of value as was established in 1990.

3. The Board of County Commissioners respectfully requests the Arapahoe County Assessor's Office to review the values for residential property in Cherry Hills Village, as soon as possible. . . .

That same date, the secretary of the County Board sent out notices informing homeowners in Cherry Hills Village of the County Board's decision to set the valuations for assessment of all residential land to the same level that was established in 1990. The notice further advised the homeowners of their right to appeal. However, the notice did not state that the assignment of the 1990 values was only to be temporary until final revaluations could be determined.

On November 18, 1991, after the assessor completed the review of all values and approval had been obtained from the property tax administrator, the County Board adopted Resolution 1355–91 which provided for the sending of special notices of valuation to the affected taxpayers informing them of the final equalized value of their property as well as their right of review to the BOAA.

In accordance with Resolution 1355–91, the special notices of valuation were sent out on December 2, 1991. Petitioners exercised their rights to review and, upon a denial of their petitions, instituted this appeal.

I.

■ Petitioners initially argue that the County Board exceeded its statutory authority in ordering a revaluation of the subject properties. We disagree.

Colo. Const. art. X, § 15 provides for the formation of county boards of equalization which, as prescribed by law, must "raise, lower, adjust, and equalize valuations for assessment of taxes upon real and personal property located within their respective counties, subject" to the review of the State Board of Equalization. Section 39–8–102(1), C.R.S. (1982 Repl.Vol. 16B) further defines the duty imposed on county boards of equalization:

> The county board of equalization shall review the valuations for assessment of all taxable property appearing in the assessment roll of the county, directing the assessor to supply any omissions which may come to its attention. It shall correct any errors made by the assessor; and, whenever in its judgment justice and right so require, it shall raise, lower, or adjust any valuation for assessment appearing in the assessment roll to the end that all valuations for assessment of property are just and equalized within the county.

■ The process of equalization relates to the raising or lowering of the total valuation placed upon a class or subclass of property in the aggregate. Assessment, on the other hand, constitutes the process of placing a value for tax purposes upon the property of a particular taxpayer. *BQP Industries, Inc. v. State Board of Equalization,* 694 P.2d 337 (Colo.App.1984).

Petitioners do not charge that the County Board engaged in the assessment process, but rather contend that it acted beyond its statutory duty by directing the assessor to revalue the properties. We note, however, that a delegation of power such as that granted in § 39–8–102(1) confers with it those incidental, implied powers which are reasonably necessary to accomplish the objectives intended by the delegation. *See Board of County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970). The broad powers granted by § 39–8–102(1), therefore, include those necessary to effectuate an equalization of any disparities which affect the uniformities of the tax assessed.

Because the disparity involved here was caused by the undervaluation of the Cherry Hills Village properties, we conclude that the revaluation was critical to a correction of that disparity and, consequently, was necessary to enable the County Board to carry out its statutory mandate under § 39–8–102(1).

II.

■ Petitioners next challenge the County Board's action in temporarily adjusting the land values to their 1990 level. They first argue that the adjustment to 1990 values was contrary to law because it utilized the wrong base year. They also argue that the notice of that adjustment was defective because it did not conform to various statutory requirements and failed to clarify that the change was to be only temporary. There is, however, no allegation that the final revaluations were based on improper methodology or were otherwise incorrect. Therefore, the fi-

nal revaluation cured any hardship that might have befallen petitioners as a result of the temporary adjustment.

■ Additionally, the temporary existence of differences in valuations is acceptable when it results from a systematic and definite revaluation plan. *See Nuttall v. Leffingwell,* 193 Colo. 137, 563 P.2d 356 (1977). We, therefore, reject petitioners' contention that the irregularities, if any, associated with the temporary adjustment invalidated the final revaluations.

### III.

■ Petitioners also argue that the County Board had no jurisdiction to take action after August 10, 1991. Again, we disagree.

In arguing that the County Board's jurisdiction expired on August 10, 1991, petitioners rely on § 39–8–107(2), C.R.S. (1993 Cum. Supp.) which addresses the review process before a county board of equalization and provides in pertinent part:

> The board shall continue its hearings from time to time until all petitions have been heard, but all such hearings shall be concluded and decisions rendered thereon by the close of business on *August 5* of that year. Any decision shall be mailed to the petitioner *within five business days* of the date on which such decision is rendered. (emphasis supplied)

■ Time limitations governing the hearing of complaints by the assessor or the county board of equalization and the giving of notice thereof are considered mandatory when a taxpayer has been deprived of an opportunity to be heard or other protection important to a preservation of his rights. *Northcutt v. Burton,* 127 Colo. 145, 254 P.2d 1013 (1953).

■ If a taxpayer's rights have not been abridged, then the failure to follow proper statutory procedures does not necessarily negate a tax increase. *See Bea Kay Real Estate Corp. v. Aragon,* 782 P.2d 837 (Colo. App.1989). Further, the rules governing tax collection should be construed so that technical objections without substantial merit are not allowed to interfere with the important

function of raising public revenue. *Modular Communities, Inc. v. McKnight,* 191 Colo. 101, 550 P.2d 866 (1976).

Here, petitioners' argument raises a question as to whether the County Board is bound by the August 10th deadline when it conducts activities not directly associated with the appeals process. However, we need not reach a resolution of that question in this matter since petitioners have not alleged that their rights to notice or review were in any way curtailed by the time frame in which the County Board acted. It is also not argued that the County Board lacked jurisdiction when it first undertook efforts to address the deficiency. We, therefore, conclude that its actions beyond the statutory date were valid. *See Tarabino Real Estate Co. v. Sandoval,* 115 Colo. 336, 173 P.2d 459 (1946).

### IV.

■ Finally, petitioners contend that the revaluations were invalid because the special notices of valuation misstated the reasons behind the County Board's adoption of Resolution 1355–91.

However, inasmuch as we have already determined that the County Board had power to authorize the revaluations and there has been no claim by petitioners that the final revaluation was improperly calculated or that the information contained in the special notice was inadequate to enable petitioners fully to exercise their appellate rights, we conclude that this contention is also without merit.

Order affirmed.

NEY and TAUBMAN, JJ., concur.