In re the MARRIAGE OF Cynthia
C. JAEGER, n/k/a Cynthia E.
Crockett, Appellee,

and

Ronald W. Jaeger, Appellant.

No. 92CA1919.

Colorado Court of Appeals,
Div. II.

Aug. 25, 1994.

As Modified on Denial of Rehearing
Sept. 22, 1994.

Vernon K. Sessions, Denver, for appellee.

Ronald W. Jaeger, pro se.

Opinion by Judge TAUBMAN.

In this dissolution of marriage proceeding, Ronald W. Jaeger (husband) appeals temporary and permanent orders for property division, maintenance, child support, and psychological counseling, as well as orders denying his post-trial motions for relief from the judgment and disqualification of the trial judge. We dismiss the appeal in part, affirm in part, modify in part, reverse in part, and remand for further proceedings.

### I. Temporary Orders

We dismiss husband's appeal of the temporary orders for maintenance and child support. Those orders were entered in 1991 by a magistrate and were not reviewed by the district court. Husband may not appeal those orders now, since they terminated when permanent orders were entered. *See* § 14–10–108(5)(c) (1987 Repl.Vol. 6B).

### II. Security

Husband contends that the trial court abused its discretion in ordering that $25,000 of his property be held by the guardian ad litem as security for payment of mainte-

nance, child support, and the child's health insurance. We agree in part.

■ The trial court has discretion to require security to be given to ensure enforcement of its orders. Section 14–10–118(2), C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Valley*, 633 P.2d 1104 (Colo.App.1981).

■ Here, the court did not abuse its discretion in requiring security, in light of its conclusion, supported by the record, that husband did not pay all temporary support he was obligated to pay.

The trial court ordered the guardian ad litem to hold $25,000 of husband's funds in trust as security for payment of maintenance ($5,000), child support ($10,000), and health insurance ($10,000). The court specified that husband could not use this money to make the support and insurance payments, but rather, that this fund would be utilized only in the event husband did not make timely payments. The court further directed that if funds from this trust account were utilized, husband would be required to reimburse that fund. Finally, the trial court stated that it would consider releasing those funds in the future but that they be held "for a minimum of a year," after which husband's payment record could be reviewed.

We agree with husband's argument that the amount required to be set aside as security was excessive.

■ Under the predecessor statute to § 14–10–118(2), the supreme court defined security as "that which is given or pledged to make secure or certain the fulfillment of an obligation." *Brown v. Brown*, 131 Colo. 467, 482, 283 P.2d 951, 959 (1955). Accordingly, amounts of security established to ensure payment of support obligations must be reasonable both in amount and duration.

■ Here, the amount ordered to be set aside as security for payment of maintenance was reasonable, since the $5,000 sum was equal to the $500 per month maintenance obligation required for ten months. However, inasmuch as the security for maintenance equaled the total amount due, we conclude that the trial court abused its discretion insofar as it required replacement of any security

used for payment of maintenance. We cannot tell from the record whether husband's maintenance obligation was satisfied in a timely manner. Therefore, on remand the trial court is directed to reconsider and make findings as to the duration of security required for payment of maintenance. If the maintenance obligation has been satisfied, the $5,000 in security for that purpose should be released to husband.

Additionally, we conclude that the portion of the order requiring $20,000 to be set aside as security for payment of child support and health insurance was not supported by any competent evidence.

When the trial court on October 21, 1992, issued its ruling on permanent orders, it had not calculated the amount of child support and did not know the cost of medical insurance. The trial court's October oral ruling was adopted as its written judgment in March 1993.

However, it was not until May 5, 1994, that the trial court entered an order for child support which established child support and health insurance obligations for the first time. This order provided that husband's child support obligation for October 1992 through March 1993 was $184 per month; that from April 1993 through August 1993 wife was actually required to pay husband monthly child support of $57; and beginning September 1993, husband was required to pay wife child support of $42 per month. The child support order also indicated that as of October 1992, husband was making monthly health insurance payments of $45.

■ If the amount ordered by the trial court as security is greatly in excess of the amount actually owed, it is not security, but is confiscatory. *Brown v. Brown, supra.*

■ Here, the trial court erred in establishing amounts for security without first knowing the actual child support and health insurance payments. Also, given that the monthly child support decreased from $184 to $42 and that the monthly insurance premium was $45, the security required for the payment of these obligations appears to have been confiscatory. Therefore, on remand the

trial court is directed to reconsider and make findings as to the amount and duration of any security reasonably necessary to ensure payment of husband's child support and health insurance obligations.

### III. Arrearage

Husband further contends that the trial court abused its discretion in awarding an arrearage of $7520 to wife. Wife concedes, and we agree, that the arrearage should be reduced by $193. Therefore, the order is modified accordingly.

■ Further, we agree with husband's contention that he should have been credited for half of the parties' joint tax refund check from the State of Colorado in the amount of $1,807, which husband used to make the April 1992 support payment. In its permanent orders, the trial court said it was not going to charge this amount to husband and recognized it was marital property but did not credit any of it to husband. Accordingly, husband should receive credit for one-half of this $1,807 income tax refund check. The arrearage order should be modified accordingly.

Husband further contends that, because the trial court failed to take into account $3,000 awarded to wife in August 1992 for child support, the arrearages computed for July through September 1992 were calculated erroneously. We disagree.

During the August 1992 hearing, the trial court made clear that it was making this $3,000 award as a temporary order and that a final accounting with respect to husband's support obligations would be made during permanent orders. During the permanent orders hearing, the court made such an accounting, considering payments which husband had actually made. Accordingly, we find no error in this regard.

Finally, husband contends that the trial court abused its discretion in ordering him to pay maintenance at a time when he was physically incapacitated. We perceive no error.

■ A review of the record reveals that the trial court considered the testimony of the parties concerning husband's physical condition and nevertheless determined that husband was capable of working and paying support. Accordingly, we will not disturb the trial court's ruling with respect to this aspect of the arrearages.

### IV. Mental Health Counseling

Husband also contends that the trial court abused its discretion in ordering, contrary to his Christian Science beliefs and those of his son, that the parties' child receive mental health counseling with a professional of non-Christian Science background. More specifically, he contends that his son's right to receive mental health counseling through his church and husband's right to provide such counseling have been abridged in violation of their First Amendment rights. In the circumstances presented here, we disagree.

■ Under § 14–10–130(1), C.R.S. (1987 Repl.Vol. 6B), the custodial parent has the right to determine the child's health care and religious training, even if the noncustodial parent disagrees. *See Rhoades v. Rhoades*, 188 Colo. 423, 535 P.2d 1122 (1975). Moreover, the court has no authority to intervene in that determination, unless, on motion by the noncustodial parent, the court finds that the child's physical health would be endangered or emotional development significantly impaired. *See In re Marriage of Oswald*, 847 P.2d 251 (Colo.App.1993).

That statutory section was modeled on Uniform Marriage and Dissolution Act § 408(a), which was "designed to prevent intrusions upon the prerogatives of the custodial parent at the request of the noncustodial parent." 9A Uniform Laws Annot. 627 (1987) (Comment).

■ Thus, generally, and in the absence of the specific findings required under § 14–10–130(1), we would agree that a trial court such as the one here would represent an improper intervention in wife's choice of religious and health care for the child. *See In re Marriage of Short*, 698 P.2d 1310 (Colo. 1985); *In re Marriage of Oswald, supra.* Here, however, wife is the sole legal custodian of the child, and by arguing before us in favor of the order for non-Christian Science

counseling, she has ratified it. In these circumstances, we conclude husband's First Amendment rights have not been violated, and we find no reason to reverse that order.

## V. Property Division

Husband also contends that the trial court abused its discretion in the division of property. We disagree.

The trial court has broad discretion in dividing marital property. The division must be equitable, but need not be mathematically equal. *In re Marriage of McGinnis,* 778 P.2d 281 (Colo.App.1989).

The trial court acted within its discretion in awarding marital assets valued at about $180,911 to wife and $147,697 to husband. That division, although not equal, appears to be equitable based on the record as a whole, and husband's depletion of the marital estate.

We reject husband's contention that the property division must be set aside because the trial court incorrectly determined that wife had $25,000 equity in a condominium she owned at the time of the marriage. The trial court properly exercised its discretion in crediting wife with half of this amount in consideration for the amount of money she brought into the marriage, and dividing $12,500 equally between the parties.

Further, the court's valuation of the property is adequately supported by the record, including the parties' stipulations. It was not error to adopt wife's valuation or refer to one of her exhibits as a starting point for the division. *See In re Marriage of Price,* 727 P.2d 1073 (Colo.1986).

The court properly determined that the Reserve Fund, acquired during the marriage, was not husband's separate property. *See* § 14–10–113(2), C.R.S. (1987 Repl.Vol. 6B). Although husband argues that the parties agreed that it should be his, wife testified to the contrary.

In connection with the division of personal property, husband asserts that he is entitled to a $2,000 payment from the wife. That claim for enforcement of the permanent orders may be addressed to the trial court, but it does not present grounds for reversal here.

## VI. Child Support

Husband also contends that the trial court abused its discretion in attributing income to the parties. We disagree.

If a parent is voluntarily unemployed or underemployed, child support is to be calculated based on a determination of potential income, subject to exceptions not applicable here. Section 14–10–115(7)(b)(I), C.R.S. (1993 Cum.Supp.).

The trial court appropriately imputed income to husband based on his average income in three prior years. *See In re Marriage of Hannum,* 796 P.2d 57 (Colo.App. 1990). And, the court properly included interest income in the calculation, in accordance with the statutory definition of income for child support purposes. *See* § 14–10–115(7)(a)(I)(A), C.R.S. (1993 Cum.Supp.).

Further, we find no abuse of discretion in the imputation of income to wife based on a nine-month teacher's salary and no requirement that part of husband's business income be imputed to her.

Contrary to husband's assertion, in calculating child support the trial court properly accounted for the maintenance paid to wife.

## VII. Attorney Misconduct

Husband contends that he is entitled to a new trial because of his attorney's misconduct at the permanent orders hearing. He asserts that his prior attorney improperly agreed to limit the time for presentation of evidence at the permanent orders hearing and alleges numerous instances in which he claims his attorney provided inadequate representation. We conclude that such allegations cannot form the basis for granting a motion for new trial.

C.R.C.P. 59(d)(1) provides that, subject to the provisions of C.R.C.P. 61, a new trial may be granted for "any irregularity in the proceedings by which any party was prevented from having a fair trial." Relying on *Park Stations, Inc. v. Hamilton,* 38 Colo.App. 216,

554 P.2d 311 (1976), husband argues that this rule applies to the type of attorney misconduct he alleges. *Park Stations, supra,* however, is distinguishable because it concerned allegations of attorney misconduct by an opposing attorney, not allegations of misconduct by a party's own prior attorney. *See also Blecker v. Kofoed,* 714 P.2d 909 (Colo. 1986) (predecessor of C.R.C.P. 59(d)(1) applied in similar circumstances). We are aware of no reported case in Colorado applying C.R.C.P. 59(d)(1) to permit a motion for new trial to be granted when a litigant contends that the irregularity was the misconduct of his or her own former attorney.

■ Although the plain language of C.R.C.P. 59(d)(1), *i.e.,* "any irregularity" affecting "any party," suggests that it applies to the circumstances here, if interpreting a rule by its plain language alone leads to an absurd or anomalous result, we may look beyond the plain meaning to give it effect. *See In re Marriage of Spector,* 867 P.2d 181 (Colo.App.1993).

■ Here, husband's motion would in effect allow him to try a malpractice action against his former attorney in the guise of a C.R.C.P. 59 motion for new trial. We conclude that this result would be anomalous, particularly where, as here, husband's former attorney has withdrawn from the case and would not be present to respond to allegations that he had provided inadequate representation to husband. In these circumstances, we agree with wife that husband's remedy lies either in a separate malpractice action or by bringing a grievance against his former attorney before the supreme court.

Accordingly, we affirm the trial court's denial of the husband's motion for new trial based upon allegations of his prior attorney's misconduct.

## VIII. Disqualification of Judge

■ Husband admits that his contention concerning disqualification of the trial judge is moot, as that judge is no longer assigned to this case. We would, however, also note that the vast majority of husband's complaints about the trial judge's rulings represent disagreement about legal issues and, thus, would not justify disqualification. *See Brewster v. District Court,* 811 P.2d 812 (Colo.1991).

## IX. Relief from Judgment

■ We reject husband's contention that the court abused its discretion in denying his C.R.C.P. 60(b) motion for relief. Husband's assertions as to the court's evidentiary rulings and wife's testimony and evidence do not constitute cognizable grounds for relief under that rule.

## X. Other Errors

■ Husband's request for an award of attorney fees for this appeal is without merit, as he appears *pro se.*

The appeal of the temporary orders is dismissed. The order requiring $25,000 security is reversed, and the cause is remanded to the trial court to reconsider the duration and amount of security reasonably required to secure husband's performance. The order for arrearages is modified and reduced to $6,423.50. In all other respects, the judgment and orders are affirmed.

CRISWELL and MARQUEZ, JJ., concur.